# In the United States Court of Federal Claims

No. 18-1798C

Filed: January 21, 2021[1]

| | |
|---|---|
| **7800 RICCHI, LLC,**<br><br>        *Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>        *Defendant.* | **Keywords:** Contracts; Contract formation; Letter of Intent; Offer and acceptance; Breach of express contract; Breach of implied-in-fact contract; Breach of duty of good faith and fair dealing. |

*Matthew A. Lafferman*, Trial Attorney, Dentons US LLP, Washington, D.C., with whom were *William D. Dunn* and *John David Blakely,* Of Counsel, Dunn Sheehan LLP, for Plaintiff.

*Joshua A. Mandlebaum,* Trial Attorney, *Steven J. Gillingham,* Assistant Director, *Robert E. Kirschman, Jr.,* Director, and *Ethan P. Davis,* Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom were *Wendy A. Harris*, Commercial and Appellate Litigation, United States Postal Service, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**[2]

  This case presents a basic issue regarding contract formation. The parties' disagreement involves an extension of a longstanding lease agreement between Plaintiff, 7800 Ricchi, LLC ("Ricchi"), and Defendant, United States, through the United States Postal Service. (*See generally* Compl., ECF No. 1). Despite negotiations to extend a lease agreement for 18 months and execution of a Letter of Intent, Ricchi claims that the United States breached its agreement by vacating the premises before the end of the amended lease. (*See* Compl.).

  Before the Court is the United States' Motion for Summary Judgment. (Def.'s Mot., ECF No. 33). As explained below, the Court finds that the parties did not form a valid contract to

---

[1] This Order was originally filed under seal on December 28, 2020, (ECF No. 36). The Court provided parties the opportunity to review this opinion for any proprietary, confidential, or other protected information and submit proposed redactions. The Joint Status Report of January 11, 2021, (ECF No. 38), indicated that the parties propose no redactions. Thus, the sealed and public versions of this Order are identical except for the publication date and this footnote.

[2] The case was originally assigned to Senior Judge Loren A. Smith and transferred to the undersigned on December 3, 2019. (ECF No. 25).

extend the existing lease beyond November 30, 2018. As such, the United States' Motion for Summary Judgment is **GRANTED**.

### I.   Background

Since 1993, the United States Postal Service ("USPS") has rented space located in Dallas, Texas. (DA281; PA447).[3] This building, previously owned by 7800 Stemmons LP,[4] served as headquarters for USPS's Southern Area Office. (DA2; PA447). USPS entered its most recent lease agreement for that space in November of 2013. (DA1–55). That lease was for a five-year term ending on November 30, 2018. (DA4).

During that lease term, USPS experienced numerous issues with the building causing them to explore relocation. (DA56–58, 67–80, 202, 292). USPS intended to buy an existing building owned by Nokia of America Corporation ("Nokia") in Plano, Texas, but that plan folded in early 2018. (DA67–80, 81–85). Subsequently, USPS changed course and planned to construct a new building on USPS-owned land. (DA117–23). In order to continue operation during construction, USPS sought to obtain a 12-month extension of its lease with Ricchi. (DA81–86). Ricchi resisted entering a lease for less than 18 months. (DA96, 102). Therefore, as part of the negotiations, USPS tried to secure a right of termination. (DA96, 102). On February 28, 2018, USPS, through its broker, sent Ricchi a Letter of Intent outlining the terms of an 18-month lease renewal. (PA90). On March 5, 2018, Ricchi responded with a revised Letter of Intent that instead listed three "options" for lease terms of 60, 36, or 18 months. (PA90, 288–90; DA108–110). On the last page of the revised Letter of Intent, there was a blank for USPS to select one of the options followed by signature lines for a USPS representative. (DA108–110).

Diana Alvarado, a USPS contracting officer, chose the third option (18 months) and signed Ricchi's revised Letter of Intent, returning it on March 12, 2018. (DA106–110). Contemporaneous to returning the Letter of Intent, USPS included a two-page unsigned Lease Amendment to officially extend the term of the lease through May 31, 2020. (DA106, 111–13). The Letter of Intent stated it was subject to Ricchi's lender's approval, and Ricchi had previously communicated that it would not sign the Lease Amendment "until after USPS signs/notarizes 2 originals of the Lease Amendment [and] delivers them to [Ricchi]." (DA110, 104). Ricchi was also aware that, over its objections, it would likely be June of 2018 before USPS would obtain proper approval to sign the Lease Amendment. (DA104–05, 106, 114).

On May 1, 2018, before the Lease Amendment with Ricchi was signed, USPS received notice of a second opportunity to buy the Nokia building it had sought to purchase earlier. (DA128, 221). USPS did not disclose this information to Ricchi. (PA106). USPS immediately began negotiating to purchase the Nokia building and, on July 19, 2018, USPS and Nokia fully

---

[3] Both parties have attached consecutively paginated appendices as exhibits to their briefs. (*See* ECF Nos. 33-1, 33-2; 34-1, 34-2). The Court will refer to Ricchi's Appendix as ("PA_") and the United States' as ("DA_").

[4] 7800 Stemmons LP transferred its interest in the property to Ricchi in 2015. (Compl. at 3).

executed a Purchase and Sale Agreement. (DA128, 131–32, 221–52, 253). While these purchase negotiations were ongoing, Ricchi continuously pressed USPS for updates as to their Lease Amendment. (*See, e.g.*, DA218–220). On or about July 26, 2018, Ricchi discovered that USPS was making other arrangements for its operations beginning in October of 2018 and sent a letter to USPS asserting it was "relocating without proper notice," and contacted them regarding that discovery. (DA253, 257, 258, 259–64). Alvarado informed Ricchi via telephone call that "USPS [was] in the process of making a decision about [the] lease extension." (PA349). On August 1, 2018, Alvarado sent a letter to Ricchi assuring it that USPS "intends to honor the Lease dated November 30, 2013, through its expiration date of November 30, 2018." (DA267). The letter further stated USPS's position was that "[w]ithout a binding, executed agreement to renew the Lease or move forward with one of the newly offered options, there is no contractual lease requirement for the [USPS] to continue its tenancy." (DA267). Finally, the letter provided that "there [had] been no formal internal decision on relocating" and that "[t]he review and approval process is still ongoing." (DA267).

On August 15, 2018, the Postmaster General finally approved the funding to buy the Nokia building in Plano coveted by USPS. (DA277). On August 17, 2018, Ricchi submitted its certified claim to the contracting officer, stating that USPS was obligated to lease from Ricchi from December 1, 2018, to May 31, 2020. (DA295–302). USPS closed on the Nokia property on September 6, 2018, (DA303–09), and the contracting officer denied Ricchi's certified claim the next day. (DA310–11). In its letter of denial, USPS "formally notif[ied]" Ricchi that USPS would vacate by November 30, 2018, the current lease's expiration date. (DA310). This litigation followed. In its Complaint, filed November 12, 2018, Ricchi brings claims alleging (1) breach of contract (Count I); (2) breach of an implied-in-fact contract (Count II); and (3) breach of the duty of good faith and fair dealing (Count IV). (Compl. at 7–9). Under Count III, Ricchi also seeks a declaratory judgment that USPS executed a valid contract to extend its lease for 18 months. (Compl. at 8–9).

## II.     Analysis

The United States has moved for summary judgment, arguing that the parties did not form either an express or implied-in-fact contract during their negotiations. (Def.'s Mot. at 11). The United States further submits that Ricchi's claim for breach of the duty of good faith and fair dealing is actually a claim for misrepresentation, which is a tort and thus outside the scope of this Court's subject matter jurisdiction. (*Id*. at 12). Ricchi counters that the Letter of Intent and Lease Amendment are valid and binding contracts, either express or implied-in-fact. (Pl.'s Resp. at 14, ECF No. 34). Additionally, Ricchi argues that there is a fact issue that precludes summary judgment on its breach of the duty of good faith and fair dealing claim. (*Id*. at 26). Ultimately, the Court finds that a valid contract did not exist, thus no genuine issue of material fact precludes summary judgment as to each count of the Complaint.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The moving party bears the initial burden of proof, but this burden may be discharged by showing the absence of evidence supporting the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In moving for summary judgment of non-infringement, "all that is required is 'notice to the party with the burden of proof that she had to come forward with

all of her evidence.'" *Exigent Tech., Inc. v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1308 (Fed. Cir. 2006) (quoting *Celotex Corp.,* 477 U.S. at 326) (internal alterations omitted). In other words, "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Id.* at 1309.

If the moving party makes such a showing, the burden shifts to the non-moving party to present such evidence. *Id.* at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," it must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986) (emphasis and citations omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law. *Dairyland Power Co-op v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 323).

### A. Ricchi and USPS Never Formed a Contract

The Court's initial inquiry here is whether the parties actually formed a contract. As stated above, Ricchi asserts that its communications with USPS and the signed Letter of Intent of March 2018 amounted to a contract for the extension of the lease beyond November 30, 2018. (Pl.'s Resp. at 14). The United States argues here that the Letter of Intent did not rise to the level of a contract, express or implied-in-fact, with Ricchi. (Def.'s Mot. 13–14).

To prove the existence of a contract, a plaintiff must establish four elements: "(1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005). "A failure of any of these requirements precludes the existence of a valid contract." *McLeod Group LLC, v. United States*, No. 2020-1389, 2020 WL 7393229, at *2 (Fed. Cir. Dec. 17, 2020). The United States' motion contests only the second and fourth elements. The United States argues that negotiations surrounding the Letter of Intent did not amount to an offer or an acceptance because the drafted Lease Amendment document was never signed by USPS and because the negotiators for both sides were not authorized to make a final agreement. (Def.'s Mot. at 11). Furthermore, the United States asserts that Alvarado's statements and actions could not have bound USPS because the contemplated rent for the lease extension exceeded the limit of her warrant. (Def.'s Mot. at 11 (citing DA64)). Ricchi disagrees, arguing in sum that the Letter of Intent satisfies the requisite elements to form an enforceable contract, either express or implied-in-fact. (Pl.'s Resp. at 14–21).

The Court first looks to whether there was an offer or acceptance. The facts of this case are similar to that of *Neenan v. United States*, 112 Fed. Cl. 325 (2013), *aff'd* 570 Fed. Appx. 937 (Fed. Cir. 2014). There, another judge on the Court of Federal Claims found that no contract was created when the government forwarded an extension of a lease agreement to the plaintiff, which the plaintiff signed and returned, but the contracting officer never countersigned. *Id.* at 330. There, the Court found that forwarding the proposed lease extension "is plainly not, in itself, an offer. It merely forwarded the draft agreement." *Id.* The plaintiff in *Neenan* also pointed to the

contracting officer's apparent assent to the bargain when they stated, "It's a deal," in reference to the agreement. *Id.* at 329. Even considering that outward, verbal agreement, the Court went on to hold that it "cannot ignore the fact that the enclosed draft lease was not signed" and found that "[o]nly after the contracting officer's final review of the lease and proof of authority, followed by a signature, would there be final approval." *Id.*

Subsequently, another judge of this Court applied the *Neenan* rationale to *JEM Transp., Inc. v. United States*, 120 Fed. Cl. 189 (2015), a case in which a transportation services provider alleged that USPS failed to recognize a purported contract extension for mail delivery. The plaintiff relied on an email from the contracting officer stating that "[t]his contract has been renewed full term." *JEM Transp.*, 120 Fed. Cl. at 195. Despite that affirmation, as in *Neenan*, USPS sent the extension document to the plaintiff with the contracting officer's signature block left unsigned. *Id.* The Court found that the unsigned document indicated the Plaintiff "ha[d] reason to know that [USPS] [did] not intend to conclude a bargain until [it] has made a further manifestation of assent." *Id.* (citing *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001)). Ultimately, the Court found that JEM had no right to an extension beyond the expiration date of the underlying contract it actually signed. *JEM Transp.*, 120 Fed. Cl. at 196.

Applying these principles, a review of the record makes clear that the Letter of Intent is not binding or a valid extension of the lease. The United States is correct in claiming that offer and acceptance do not exist here. "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Linear Tech.*, 275 F.3d at 1050 (quoting Restatement (Second) of Contracts § 26 (1981)). As expressed in the comments to the Restatement, it is "common" to use "promissory expressions or words of assent in unsigned documents or letters where the document is intended not as an offer but only as a step in the preliminary negotiation of terms . . .." Restatement (Second) of Contracts § 26, cmt e.

It is undisputed that the parties executed the Letter of Intent with the understanding that the extension would be effectuated upon the signing of the Lease Amendment. There would be no other reason that the Lease Amendment included a blank space left for the contracting officer's signature. The March 5, 2018 Letter of Intent signed by Alvarado stated that it was subject to approval by Ricchi's lender, (DA110), and Ricchi explained that it could not commit to being bound until after obtaining such approval. (DA107, 917 (stating "[T]here was significant discussion regarding the lender on the building's need to approve the lease before allowing his client the Landlord to execute the lease . . .."))). Ricchi further stressed that it would not sign a lease amendment until after USPS signed it. (DA104 ("Landlord will not sign USPS Lease Amendment for the 18-month extension until after USPS signs/notarizes 2 originals of the Lease Amendment & delivers them to the Landlord."); DA106 ("I have told USPS that [Ricchi] will not sign this Amendment until after it is signed by USPS."); *see also* DA107 ("Leo said if you get the amendment signed rather than LOI signed is ok and he will sign as soon as he gets lender approval – if you guys want to go that way.")). The record further indicates that Ricchi was aware of USPS's need to obtain approval, and the timing associated with that before it could commit to a binding agreement. (*See* DA104–05 ("[Ricchi] was not happy about the June timeframe . . .."); DA114 ("I don't think USPS can speed up their timing beyond the June

execution for the Amendment.")).

Thus, there can be no dispute that Ricchi had reason to know that USPS did not intend to conclude a bargain until it had made a further manifestation of assent. *See Linear Tech.*, 275 F.3d at 1050. Further, and more compelling to the Court's decision, the clearest evidence that USPS never committed to being bound is that USPS *never signed* the drafted lease-amendment document. (DA113 (unsigned lease amendment); DA275 (lease amendment attached to demand letter)). As in *Neenan*, this Court cannot ignore the fact that the enclosed draft Lease Amendment was not signed.

The Court recognizes that the Letter of Intent in this case is more formal than *Neenan*'s "It's a deal," and the emailed affirmation illustrated in *JEM Transport*. However, it is clear from the record that the binding document which would extend the lease was the Lease Amendment, not the Letter of Intent itself. The Letter of Intent's purpose was explicit: to "authorize [Ricchi] to immediately prepare a lease amendment to be signed by the United States Postal Service *upon mutual acceptance* of the language contained in the amendment document." (DA110). As it applies in this case, the Letter of Intent represents a step in the preliminary negotiation of terms but is not an offer. Because there was no express contract in this case, the claim that the United States has breached such a contract must fail. Therefore, the United States is entitled to summary judgment on Count I. Because the Court concludes no express contract was formed, the Court need not consider whether the contracting officer possessed the requisite authority to enter into the alleged contract.

In the alternative to its theory that an express contract was created and breached, Ricchi alleges the creation and breach of an implied-in-fact contract. (Compl. at 7–8). A contract implied-in-fact differs from an express contract only in that a written instrument is not required if the party trying to prove formation can otherwise show the existence of all the elements which are required in forming an express contract. *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("The general requirements for a binding contract with the United States are identical for both express and implied contracts."); *Russell Corp. v. United States*, 537 F.2d 474, 482 (Ct. Cl. 1976) ("The fact that an instrument was not executed is not essential to consummation of the agreement."). "An implied-in-fact contract is one founded upon a meeting of minds and is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Turping v. United States*, 913 F.3d 1060, 1065 (Fed. Cir. 2019) (quoting *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003)). Ricchi's alternative theory is that the conduct of the parties evinces a contract that can be implied-in-fact and contains the same terms as the Letter of Intent.

As with Count I, Ricchi cannot succeed on an implied-in-fact contract claim. As explained above, Ricchi cannot show offer and acceptance because, at every stage, the parties clearly had not consummated the deal. Because Ricchi cannot show an offer and acceptance necessary to prove the existence of an express contract, and it asserts no additional arguments or evidence supporting its implied contract claim, that claim must also fail. The only contract between Ricchi and USPS expired on November 30, 2018. No inference of an implied contract can be drawn without offer and acceptance, thus the United States cannot be liable for breach.

Consequently, the United States is entitled to judgment on Count II.

### B. USPS Did Not Breach its Duty of Good Faith and Fair Dealing

Ricchi further asserts that USPS breached its duty of good faith and fair dealing when it "announc[ed] its intention to abandon the Premises on November 30, 2018 . . . despite its agreement to renew the Lease." (Compl. at 9). The United States argues that USPS did not breach the duty with respect to the existing lease contract, that the duty does not attach to contracts not-yet-formed, and that Ricchi's theory of recovery is grounded in misrepresentation, which is a tort and thus outside the jurisdiction of this Court. (Def.'s Mot. at 11, 17–18; Def.'s Reply at 7–8, ECF No. 35). Ricchi responds that whether USPS breached the duty of good faith and fair dealing is a factual issue and thus, summary judgment should be denied. (Pl.'s Resp. at 26–27).

In every contract, including government contracts, both parties maintain an implied duty of good faith and fair dealing. *See Alabama v. North Carolina*, 560 U.S. 330, 351 (2010); *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014); *Bell/Heery v. United States*, 739 F.3d 1324, 1334-35 (Fed. Cir. 2014); *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010); *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005); Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981). The "implied duty of good faith and fair dealing" can also be understood as the "implied duty not to hinder and the implied duty to cooperate." *Precision Pine*, 596 F.3d at 827. "Government actions that are unreasonable under the circumstances" are sufficient to constitute a breach of the implied duty not to hinder performance. *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 770 (2005). Failure to fulfill the implied duty of good faith and fair dealing "constitutes a breach of contract," the same as if an explicit contractual provision was violated. *Metcalf*, 742 F.3d at 990. The implied duty of good faith and fair dealing exists "because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain." *Id.* at 991.

The United States is correct that the duty of good faith and fair dealing does not extend to "the formation of a contract." *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (quoting Restatement (Second) of Contracts § 205). Furthermore, the exercise of a legitimate contractual right cannot constitute a breach of the duty of good faith and fair dealing. *Scott Timber Co.*, 692 F.3d at 1375 (quoting *David Nassif Assocs. v. United States*, 644 F.2d 4, 12 (Ct. Cl. 1981) ("[T]he assertion of a legitimate contract right cannot be considered as violative of a duty of good faith and fair dealing.")).

The United States is entitled to summary judgment on Count IV for two reasons. First, USPS was not obligated to renew its lease agreement with Ricchi and ultimately did not agree to do so. When the underlying lease ended, so did the parties' obligation to one another. USPS elected to pursue other leasing arrangements for its tenancy following the expiration of its lease agreement with Ricchi. "[T]he covenant [of good faith and fair dealing] imposes obligations . . . not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp.*, 395 F.3d tat 1304 (citations omitted). The "fruits" of the contract were obtained by both parties: USPS secured a physical location for its Southern Area Office,

and Ricchi was financially compensated for USPS's tenancy. Nothing more was owed or required of either party.

Second, the facts Ricchi alleges are in dispute go to whether USPS was truthful in negating a new lease contract to extend its tenancy. The scope of the implied duty of good faith must be "tether[ed] to" and "grounded in" the terms of the existing contract and do not attach to negotiations. *See Dobyns v. United States*, 915 F.3d 733, 740–41 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1106 (2020) ("Inferring an implied duty . . . without a tether to the contract terms, would fundamentally alter the balance of risks and benefits associated with the . . . agreement and cannot be the basis of a claim for breach of the implied duty of good faith and fair dealing."). As the Court has explained, the negotiations produced no contract and, without a contract, there were no contractual terms to which the duty of good faith and fair dealing could be tethered. Therefore, the United States is entitled to summary judgment on Count IV.

### III.   Conclusion

For the foregoing reasons, the United States' Motion for Summary Judgment is **GRANTED**. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

Pursuant to the Protective Order in this case, (ECF No. 21), the Court has filed this ruling under seal. The parties shall confer to determine proposed redactions to which all the parties agree. By no later than January 11, 2021, the parties shall file a joint status report indicating their agreement with the proposed redactions, attaching a copy of those pages of the Court's ruling containing proposed redactions, with all proposed redactions clearly indicated. The parties also shall, by the same date, file any redacted versions of briefing they filed under seal in this case to the extent such redacted versions have not already been filed.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge